UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERCEDEZ BENZ FINANCIAL SERVICES USA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | No. 24 CV 4840 <br><br> Judge Georgia N. Alexakis |

MEMORANDUM OPINION AND ORDER

Plaintiff Mercedes Benz Financial Services USA, LLC ("MBFS") filed this 42 U.S.C. § 1983 action [1] alleging that the Defendant City of Chicago ("the City") violated its Fifth and Fourteenth Amendment due process rights. *Id.* ¶¶ 45–53.[1] MBFS also brings three state law claims against the City. *Id.* ¶¶ 31–44. The City moves to dismiss MBFS's complaint. [19]. For the reasons set forth below, the Court grants the City's motion.

I.  **Legal Standards**

The City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Dismissal is warranted only if the allegations, taken as

---

[1] MBFS also alleged a Fourth Amendment claim against the City. [1] ¶¶ 54–62. However, in its response to the City's motion to dismiss, it "recognize[d] the validity of the arguments presented in the Motion [to Dismiss] as to MBFS's claim for Unreasonable Seizure (Count V)," and "does not oppose the dismissal of this claim." [20] at 2 n.1. The Court therefore dismisses Count V without further analysis.

true (as the Court does in the section that follows), do not state a plausible claim for relief. *Id.*

## II. Factual Background

MBFS held a lien on a vehicle. [1] ¶¶ 7–9. After the vehicle accumulated more than two unpaid parking or compliance tickets, the City towed and impounded it pursuant to § 9-100-120 of the Municipal Code of Chicago ("MCC"). [1-3]. Around two weeks later, the City mailed MBFS a notice of the vehicle's impoundment. [1] ¶ 10. The notice stated that a lienholder may reclaim a vehicle by providing the City with:

- A copy of the conditional sales agreement and title;
- An affidavit stating that the purchaser defaulted on the agreement;
- An indemnification certificate executed by an authorized agent of the lienholder; and
- Payment of all fees related to the vehicle's impoundment.

*Id.* ¶ 11; [1-3]. The notice also warned the recipient that a failure to claim the vehicle within 21 days of the notice's date could result in the sale or disposition of the vehicle. [1-3]. MBFS contacted the City "to ascertain the documents and other requirements for MBFS to obtain the release of the Vehicle," but the City employees "were unable to confirm the exact substance or content of any documents required to obtain the release of the Vehicle and were unable to provide a statement as to the amounts owed for the release of the Vehicle." [1] ¶ 14.

Around 54 days after receiving notice of the vehicle's impoundment, an MBFS agent presented a City employee with the following documents:

- A copy of the conditional sales agreement and title;

- An affidavit stating that the purchaser defaulted on the agreement;
- A "[n]otarized Hold Harmless statement from MBFS"; and
- A notarized statement from MBFS authorizing the release of the vehicle to its agent.

*Id.* ¶ 17. MBFS's agent was "ready, willing, and able" to pay the vehicle's impoundment fees. *Id.* ¶ 18. However, the City employee refused to release the vehicle, claiming that MBFS needed to provide a default letter, a notarized sales agreement and title, an authorization letter on MBFS letterhead, and a hold-harmless statement that did not abbreviate "Mercedes Benz Financial Services." *Id.* ¶ 20.

Around one month later, MBFS received notice that, two weeks after MBFS's failed reclamation attempt and more than two months after the City sent notice of the vehicle's impoundment, the City disposed of the vehicle. *Id.* ¶ 21.

MBFS now sues, alleging that the City's failure to relinquish the vehicle infringed upon its procedural and substantive due process rights under the Fifth and Fourteenth Amendments and violated state law. [1]. The City moves to dismiss. [19].

### III. Analysis

MBFS seeks to hold the City liable for its constitutional injuries. [1] ¶¶ 45–53. But a city cannot be liable for the injuries inflicted solely by its employees. *Orozco v. Dart,* 64 F.4th 806, 823 (7th Cir. 2023) (citing *Monell v. Dep't of Soc. Serv. of New York,* 436 U.S. 658, 690 (1978)). Instead, "[a] plaintiff must allege that the local government *itself* caused or participated in the deprivation of his rights." *Petropoulos v. City of Chicago,* 448 F. Supp. 3d 835, 839 (N.D. Ill. 2020). To so allege, the plaintiff

3

must show that (1) it suffered a deprivation of a federal right, (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decisionmaker with final policymaking authority for the city, which (3) proximately caused its injury. *Ovadal v. City of Madison, Wisc.,* 416 F.3d 531, 535 (7th Cir. 2005); *see also Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (a plaintiff must allege that the policy or custom was the "moving force" behind the constitutional violation).

For the purpose of resolving this motion to dismiss, the Court will assume that MBFS properly alleged it suffered the deprivation of its due process rights under the Fifth and Fourteenth Amendments. [1] ¶¶ 46–47. The next question then is whether MBFS alleged that an express policy, widespread custom, or the deliberate act of a City policymaker was the moving force behind these injures. *Ovadal,* 416 F.3d at 535.

In its complaint, MBFS contends that the City caused its injuries through its policies, which provide City employees too much discretion in denying a lienholder's attempts to reclaim impounded vehicles, [1] ¶ 48, and through its failure to enact appropriate policies establishing the forms and processes required for lienholders to reclaim impounded vehicles. *Id.* ¶¶ 49–52. But in its response to the City's motion to dismiss, MBFS posits a litany of additional *Monell* liability theories:

- "[T]he express policies adopted by the City through the implementation of the MCC violate the due process rights of MBFS because it fails to provide any available predeprivation hearing."

- "[T]hrough a widespread but unwritten practice, the City maintains a policy of demanding additional arbitrary documents outside of those indicated in the MCC and Notice of Impoundment, which fails to provide constitutionally minimal requirements of due process."

4

- "[T]he City has adopted a widespread but unwritten policy or custom which empowers its employees to make arbitrary and irrational determinations as to whether or not lienholders have met the requirements for obtaining the release of a vehicle."

- "[T]he City is liable for its failure … to implement … training for its employees placed in a position to make arbitrary determinations in which the risk of a constitutional violation – like the situation at hand – is obvious,"

- "[T]he City is liable for its policy of inaction despite notice that its program has caused and will cause constitutional violations."

[20] at 11-12.

A plaintiff may not amend its complaint through its response brief. *See, e.g., United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.,* 486 F. Supp. 3d 1210, 1219 (N.D. Ill. 2020) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011)); *see also Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015) (a plaintiff may supplement its factual allegations in its response brief, so long as those elaborations are consistent with the complaint). MBFS's introduction of several new theories of *Monell* liability is not a supplementation of factual allegations, but an amendment of legal argument. *Pirelli,* 631 F.3d at 448 (plaintiff may not "subtly reorient[]" its claims in its response brief in order to assert an alternative basis of liability). Therefore, the Court will not consider these newly asserted legal claims in resolving the City's motion to dismiss.

Moving first to MBFS's "policy gap" argument: In its complaint, MBFS claims that the City failed to enact "appropriate" policies and procedures "establishing acceptable forms and processes for the acceptance of claim packets from lienholders for reclaiming impounded vehicles." [1] ¶ 49. But earlier in the complaint, MBFS

5

quotes from the impoundment notice it received from the City. *Id.* ¶ 11. This notice cites to the MCC and spells out the materials that a lienholder is required to produce in order to retrieve a vehicle—in other words, it "establish[es] acceptable forms and processes for the acceptance of claim packets from lienholders." Clearly, MBFS believes this policy inappropriate. [1] ¶ 49; [20] at 5 n. 2 (asserting, without explanation, that MBFS "does take issue" with the MCC's vehicle reclamation procedures). Why, it does not say. Because MBFS's policy gap claim does not identify any gap in the City's vehicle reclamation policy, it cannot proceed. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (legal conclusions supported only by conclusory statements cannot survive a motion to dismiss); *Milan v. Schulz*, No. 21-CV-00765, 2022 WL 1804157, at *6 (N.D. Ill. June 2, 2022) (dismissing a *Monell* claim for a plaintiff's failure to "define or otherwise specify what 'adequate training' the City failed to provide" its officers).

Even if MBFS had identified a failure to enact, or gap in, the City's vehicle reclamation policies, its *Monell* claim would still fail. To allege *Monell* liability under a "policy gap" theory, a plaintiff must allege that the city knew that its failure to enact policy would cause constitutional injuries. *Orozco v. Dart,* 64 F.4th 806, 824 (7th Cir. 2023) (a city can only be held liable when it has *knowingly*—not inadvertently—allowed policy gaps that caused constitutional injury); *Daniel v. Cook Cnty.,* 833 F.3d 728, 734 (7th Cir. 2016) (the failure to establish or implement a policy must be "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision"). A plaintiff can allege a municipality's knowledge of a policy gap

6

in one of two ways: either by (1) alleging a prior pattern of similar constitutional violations stemming from the policy gap, or (2) alleging that the risk of a constitutional violation resulting from the policy gap was so high that it was obvious. *Orozco,* 64 F.4th at 825; *see also Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005) (in policy gap cases, "what is needed is evidence that there is a true municipal policy at issue, not a random event").

MBFS does not allege pattern of prior similar constitutional violations. In fact, MBFS alleges no other instances of the City wrongfully refusing to release a vehicle to a lienholder: Its complaint relies entirely on its own experience. *See generally* [1]; [20] at 11–12. MBFS plausibly alleges that in one isolated instance, a City employee failed to comply with the City's vehicle reclamation policies. But one employee's slip-up—a "random event," in other words—cannot impose *Monell* liability upon the City. *Petropoulos,* 448 F. Supp. 3d at 840; *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010) (to allege a widespread practice, a plaintiff must allege more than one—or even three—like instances).

Nor does MBFS allege that the risk of constitutional violations stemming from the City's failure to implement appropriate vehicle reclamation policies was so high that it was obvious. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020) (a plaintiff may allege that the "risk of constitutional violations [is] so high and the need for training [or a policy] so obvious that the municipality's failure to act ... reflect[s] deliberate indifference and allow[s] an inference of institutional culpability."). For example, in *Flores v. City of South Bend,* a plaintiff's *Monell* claim survived a motion

7

to dismiss, despite her failure to allege a pattern of similar violations, when she alleged that (1) a police officer drove at extreme speeds on at least three prior occasions, (2) the defendant city knew its officers routinely drove over permitted speeds, (3) the city took no steps to prevent this behavior, and 4) this failure-to-train caused the plaintiff's constitutional injuries. 997 F.3d 725, 732–34 (7th Cir. 2021). By comparison, MBFS only states, in a conclusory fashion, that its injuries arose from the City's failure "to enact appropriate policies and procedures establishing acceptable forms and processes for the acceptance of claim packets." [1] ¶ 49. Missing from MBFS's complaint are any well-pleaded allegations that the City knew that its employees' actions risked violating the Constitution, this risk was high, the need for additional policy was obvious, and the City still failed to act.

Nor does MBFS state a *Monell* claim under "express policy" theory. [1] ¶ 48. To successfully allege an "express policy" theory of liability, MBFS must, in part, identify specific language within a City policy or procedure that is facially unconstitutional. *See Spiegel v. McClintic,* 916 F.3d 611, 618 (7th Cir. 2019) ("A written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability.") (cleaned up); *Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010, at *16 (N.D. Ill. July 27, 2018) (collecting cases and holding that plaintiff's "express policy" claim failed because "the Complaint fails to identify any specific language in [the policy] that is unconstitutional when applied"). In its complaint, MBFS states that its injuries arise from the City's "policies and procedures

8

… which provide its representatives and agents in the Department of Finance unreasonable and arbitrary discretion in denying a lienholder's attempts to reclaim impounded vehicles." *Id.* MBFS does not support this assertion with citation to any City policy, let alone to any unconstitutional language within a policy. *Alcorn*, 2018 WL 3614010, at *16. MBFS's argument for *Monell* liability under an express policy theory is a conclusory statement that cannot survive this motion to dismiss. *Brooks*, 578 F.3d at 581 (7th Cir. 2009) (legal conclusions supported only by conclusory statements cannot survive a motion to dismiss).

### IV. Conclusion

For these reasons, the Court grants the City's motion to dismiss Counts IV and V. [19]. With the dismissal of MBFS's constitutional claims against the City, no federal claim survives. The Court declines to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Al's Serv. Ctr. v. BP Prods. North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

MBFS's complaint is dismissed without prejudice. On or before May 13, 2025, MBFS may file an amended complaint that cures the deficiencies with its claims, as described above, assuming it can do so while still complying with its Rule 11 obligations. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). If MBFS elects not to file an amended

complaint by May 13, 2025, the dismissal of those claims will convert to a dismissal with prejudice.

                                                                                      _____
                                                                                      Georgia N. Alexakis
                                                                                      United States District Judge

Date: April 21, 2025